UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSEPH MONAHAN,

       Plaintiff,

v.

FINLANDIA UNIVERSITY,

       Defendant.
_____/

Case No. 2:14-CV-64

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This diversity action for breach of employment contract is before the Court on the parties' cross-motions for partial summary judgment as to liability on Count I of the complaint. (ECF Nos. 13, 14.) For the reasons that follow, Plaintiff's motion will be granted and Defendant's motion will be denied.

**I.**

The operative facts are not in dispute. Plaintiff Joseph Monahan is a resident of New York who began working for Defendant Finlandia University in Hancock, Michigan, as the Dean of the International School of Business in August 2006. Monahan was granted tenure on July 2, 2007, and for the 2007-08 academic year was employed as Executive Vice President for External Relations, Dean of the International School of Business, and tenured professor. (Compl. Ex. 1.)

On July 1, 2008, the University advised Monahan that his administrative appointments

were not being renewed, but it extended him an offer of employment as a tenured professor in the International School of Business for the 2008-09 academic year, with a start date of August 22, 2008. (Compl. Exs. 2, 4.) The July 1, 2008, Letter of Appointment stated in relevant part: "Please sign, date, and return this letter and the acknowledgement form to Human Resources as evidence that you accept this appointment." (Compl. Ex. 2.) The cover letter which accompanied the Letter of Appointment stated in relevant part: "Please return the enclosed letter of appointment on or before July 15th. Should the signed letter not be received by this date, the position will not be held." (Compl. Ex. 4.)

Monahan signed the letter of appointment on July 10, 2008, properly addressed it to "Human Resource, Finlandia University, 601 Quincy Street, Hancock, MI 49930," and sent it on July 14, 2008, by express mail, second day delivery. (Compl. Ex. 6.)

On July 21, 2008, the University sent Monahan a letter which stated in relevant part:

> As of today, July 21st, the University has not received any signed appointment letter from you. The July 1st letter also informed you that should no signed appointment letter be received by July 15th the position would not be held.
>
> . . . To my knowledge there has been no direct communication from you to Finlandia's Office of the Provost or Human Resources since May 17th. Therefore the University will not continue to hold this position for you and considers the absence of response your indication of voluntary resignation as of July 15th, 2008.

(Compl. Ex. 3.)

Monahan responded by letter dated July 27, 2008, that he had sent his signed letter of appointment on July 14, 2008, by express mail. (Compl. Ex. 5.) He enclosed a copy of the

2

signed Letter of Acceptance and a copy of the receipt from the United States Postal Service. (Compl. Ex. 5, 6.)

On August 4, 2008, the University acknowledged that after receiving Monahan's July 27 letter, it discovered that it had received Monahan's signed Letter of Appointment on July 16, but the letter had been misplaced in the mailroom. (Compl. Ex. 7.) Nevertheless, the University stood by its termination of Monahan's employment because the letter had not been received until July 16, a day after the July 15 deadline:

> As indicated, however, in the letter to you dated July 1st, the deadline for responding to the faculty appointment letter was "on or before July 15th" after which the University was not obligated to hold the position for you. The deadline for reply was not met.

(*Id.*)

Monahan filed this action. He alleges in Count I that the University terminated him in breach of the employment agreement for the 2008-09 academic year. He alleges in Count II that the University failed to reimburse him for certain business expenses in breach of the employment agreement for the 2007-08 academic year.

The parties have filed cross-motions for summary judgment on Count I of Monahan's complaint relating to Monahan's employment for the 2008-09 academic year.

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for

3

summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the movant carries its burden of showing there is an absence of evidence to support a claim, the non-moving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In reviewing a motion for summary judgment this Court cannot weigh the evidence, make credibility determinations, or resolve material factual disputes. *Alman v. Reed*, 703 F.3d 887, 895 (6th Cir. 2013); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) (stating that on a motion for summary judgment "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569-70 (6th Cir. 2012) (citing *Matsushita*, 475 U.S. at 587; *Biegas v. Quickway Carriers, Inc*., 573 F.3d 365, 374 (6th Cir. 2009)). Nevertheless, the mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient to create a genuine issue of material fact. *Liberty Lobby*, 477 U.S. at 252. The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472,

1476-80 (6th Cir. 1989).

**III.**

The University contends that it is entitled to summary judgment because Monahan failed to timely return the offer of employment which contained an explicit and specific deadline by which the accepted offer had to be "received by" the University. Monahan contends that he is entitled to summary judgment because he timely accepted the University's offer when he deposited his signed acceptance into the custody of the U.S. Postal Service on July 14, 2008. In the alternative, Monahan contends that he is entitled to summary judgment because the University acknowledged that the offer was still open after the July 15 expiration date. The issue presented by these cross-motions is whether Monahan effectively accepted the University's offer of employment for the 2008-09 academic year.

As a general rule, acceptance of an offer must be made in the manner required by the offer. *See* Restatement (Second) of Contracts § 50 ("(1) Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer."); *Id*. at § 60 ("If an offer prescribes the place, time or manner of acceptance its terms in this respect must be complied with in order to create a contract."); *Pakideh v. Franklin Commercial Mortg. Grp., Inc.*, 540 N.W.2d 777, 780 (Mich. Ct. App. 1995) ("Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed."). "An offer comes to an end at the expiration of the time given for its acceptance." *Pakideh*, 540 N.W.2d at 780. "An offeree cannot accept, either through words

5

or deeds, an offer that has lapsed." *Id.* at 781. However, if an offer does not require a particular form of acceptance, any reasonable acceptance will be sufficient. *See* Restatement (Second) of Contracts at § 60 ("If an offer merely suggests a permitted place, time or manner of acceptance, another method of acceptance is not precluded."); *Id.* at § 65 ("Unless circumstances known to the offeree indicate otherwise, a medium of acceptance is reasonable if it is the one used by the offeror or one customary in similar transactions at the time and place the offer is received."). Michigan recognizes the mailbox rule which provides that, if no particular method of acceptance has been designated, posting an acceptance completes a binding contract. *See Kutsche v. Ford*, 192 N.W. 714, 715 (Mich. 1923); *Norris & Assocs., Inc. v. GRM Indus., Inc.*, 898 F. Supp. 523, 525 (W.D. Mich. 1995) (citing *State of Ohio v. Eubank*, 294 N.W. 167 (Mich. 1940)); Restatement (Second) of Contracts § 63 ("Unless the offer provides otherwise, (a) an acceptance made in a manner and by a medium invited by an offer is operative and completes the manifestation of mutual assent as soon as put out of the offeree's possession, without regard to whether it ever reaches the offeror . . . .").

The Letter of Appointment did not specify a specific method or time frame for acceptance. It merely instructed Monahan to sign and return the Letter to indicate he accepted the appointment. The University contends, however, that the Letter of Appointment must be read in conjunction with the cover letter, which provided that if the signed Letter of Appointment was not "received" by the University on or before July 15th, "the position will

6

not be held." The parties disagree as to whether the specific method of acceptance designated in the cover letter was part of the offer and governed the method of acceptance. If the Letter of Appointment alone constitutes the offer, then, because it only required return of the letter, and not receipt by the University, and because it did not have a date when the acceptance had to be made, Monahan timely accepted the offer on July 14, when he placed the signed Letter of Appointment in the mail. If, however, the cover letter was part of the offer, then Monahan's acceptance did not reach the University until a day after the University said it was due.

The Letter of Appointment was a complete offer. It was not ambiguous. It did not require extrinsic evidence to clarify its meaning or to make it complete. Courts are, however, permitted to look to the totality of the circumstances to determine what constitutes an offer. *See Challenge Mach. Co. v. Mattison Mach. Works,*, 359 N.W.2d 232, 235 (Mich. Ct. App. 1984) (citing *Mead Corp. v. McNally-Pittsburg Mfg. Corp.*, 654 F.2d 1197 (6th Cir. 1981)). Because the cover letter was sent with the Letter of Appointment, and because its additional terms do not conflict with the Letter of Appointment, for purposes of this opinion, the Court will assume that the method of acceptance specified in the cover letter is incorporated into the terms of the offer.

The University received Monahan's acceptance on July 16, a day after the date set forth in the cover letter, when the letter was delivered to the University mailroom. *See* Restatement (Second) of Contracts § 68 (providing that an acceptance " is received when the

writing comes into the possession of the person addressed, or of some person authorized by him to receive it for him . . . .").

The fact that the letter was received on July 16 rather than July 15, however, does not end the inquiry. The cover letter provides that if acceptance was not received by July 15, the position would "not be held." The University's July 21 letter advised that it "will not continue to hold this position for you", and the University's August 4 letter advised that after July 15 "the University was not obligated to hold the position for you." (Compl. Exs. 3, 7.) The University did not say that the offer expired, lapsed or was revoked as of the end of the day on July 15. Even if the University could have withdrawn the offer or offered the position to someone else after July 15, the University did not do so. Instead, the University continued to hold the position for Monahan for a few more days, as evidenced by the University's July 21 letter. In other words, the University waived the July 15 response date.

The University's own statements reflect that until the July 21 letter was sent out, the University had been holding the position for Monahan. Based on the University's statements, it is clear that the University intended to be bound by Monahan's acceptance of the offer of employment if the University had received that acceptance prior to July 21. Because Monahan did in fact accept the position on July 16, while the University was still holding the position for him, Monahan timely accepted the University's offer of employment for the 2008-09 academic year.

The Court concludes that Monahan timely accepted the University's offer of

employment, and that the University breached the contract by failing to employ Monahan for the 2008-09 academic year. Accordingly, Monahan's motion for summary judgment on Count I will be granted, and the University's motion for summary judgment on Count I will be denied.

An order consistent with this opinion will be entered.


Dated: <u>November 25, 2014</u>                             /s/ Robert Holmes Bell
                                                                       ROBERT HOLMES BELL
                                                                       UNITED STATES DISTRICT JUDGE